UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-00038-GNS

CHRISTOPHER GREEN                                                                                      PLAINTIFF

v.

OAK GROVE POLICE DEPARTMENT et al.                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (DN 23). The motion is ripe for adjudication. For the reasons that follow, the motion is **GRANTED**.

### I.   BACKGROUND[1]

While traveling to their home in Tennessee, Plaintiff Christopher Green ("Green") and nonparty Tabitha Smith ("Smith") stopped at a gas station in Oak Grove, Kentucky, so Smith could use the restroom. (Defs.' Mem. Supp. Mot. Summ. J. 2, DN 23-1 [hereinafter Defs.' Mem.] (citing Green Dep. 16, 20, 55; Smith Dep. 11)). Green stopped the car in a handicap parking spot and fell asleep. (Defs.' Mem. 2-3 (citing Green Dep. 22)). Three police officers arrived, including Danielle Adams ("Adams"), and found Green asleep in his car. (Defs.' Mem. 2-3 (citing Green Dep. 22, 54, 61)). A 911 dispatcher for the City of Oak Grove, Lisa Wineman ("Wineman"), read to Adams a report on Green from the National Crime Information Center ("NCIC"), indicating that Green was "restrained from assaulting, threatening, abusing, harassing, following, interfering, or stalking [Tabitha Smith] . . . ." (Defs.' Mem. 5 (citing Wineman Dep. 5, 11-12; Defs.' Mot.

---

[1] The parties cite to the depositions of Plaintiff Christopher Green ("Green"), non-party Tabitha Smith ("Smith"), and Defendant Danielle Adams ("Adams") throughout their briefing; however, no party submitted these depositions as exhibits. The parties' characterization of the evidence in their briefing is not evidence. Nevertheless, the Court cites the parties' briefing in order to establish the factual background of this case.

1

Summ. J. Ex. 7 at 2, DN 23-8 [hereinafter NCIC Report]). The NCIC report had apparently failed to incorporate a modification to a restraining order entered by the General Sessions Court of Cheatham County, Tennessee, which had originally prohibited Green from being near Smith, but had been modified to remove this prohibition. (Defs.' Mot. Summ. J. Ex. 3, at 1-2, DN 23-4; Defs.' Mot. Summ. J. Ex. 6, at 1-2, DN 23-7). Smith and Green were arrested and taken to jail. (Defs.' Mem. 5 (citing Green Dep. 32, 39-40)). Green was charged with violating a foreign protective order and unauthorized parking in a handicap zone. (Defs.' Mem. 5; Pl.'s Resp. Defs.' Mot. Summ. J. 1, DN 21 [hereinafter Pl.'s Resp.]). Green filed a complaint in Christian Circuit Court (Kentucky) asserting six counts against the Oak Grove Police Department, Danielle Adams individually and in her official capacity, Dennis Cunningham individually and in his official capacity, and the City of Oak Grove (collectively "Defendants"): (1) common law false imprisonment; (2) violation of Green's Fourth Amendment rights under 42 U.S.C. § 1983; (3) intentional infliction of emotional distress; (4) common law negligence; (5) vicarious liability; and (6) pre- and post-judgment interest. (*See* Compl. 1-6, DN 1-2). Defendants removed the action to this Court. (Notice Removal, DN 1).

## II.      JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question is presented. The Court has supplemental subject matter jurisdiction over Plaintiff's state law claims arising from the same case or controversy pursuant to 28 U.S.C. § 1367(a).

## III.      STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as

a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### IV.    DISCUSSION

Defendants Oak Grove Police Department, Adams individually and in her official capacity, Dennis Cunningham individually and in his official capacity, and the City of Oak Grove (collectively "Defendants") seek summary judgment on all of Green's claims. (Defs.' Mem. 1-2). Green responds only to Defendants' argument regarding his Section 1983 claim against Adams in her individual capacity for violation of Green's Fourth Amendment rights. (Pl.'s Resp. 3).

A. Section 1983 Claim Against Adams Individually

Defendants argue that Green's Section 1983 claim against Adams in her individual capacity fails as a matter of law because Adams had probable cause to arrest Green and because, even if Adams lacked probable cause, Adams is protected by qualified immunity. (Defs.' Mem. 7-11).

  1. *Probable Cause*

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted). "For probable cause to arrest to exist, the facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Johnson v. Ky.-Cnty. of Butler*, No. 1:12-CV-37-JHM, 2014 WL 4129497, at *6 (W.D. Ky. Aug. 18, 2014) (alteration in original) (quoting *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)). "[T]he Supreme Court has 'often' reminded courts that probable cause is not a 'high bar.'" *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal quotation marks omitted) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

Green argues here that Adams lacked probable cause to arrest him for violating the Tennessee foreign protective order because the NCIC report stated that an arrest should not be made on the basis of the report without first confirming the status and terms of the protective order. (Pl.'s Resp. 2-4; *see* NCIC Report 2). Defendants argue that Adams had probable cause to believe

4

Green was in violation of the protective order and further that she had probable cause to believe Green was not authorized to park in a handicap zone. (Defs.' Mem. 7-9). Certainly, probable cause to arrest would have been supported by the report to Adams of the Tennessee protective order, so long as Adams was not told of the NCIC disclaimer regarding the need for before confirmation before arrest. *See Cornu-Labat v. Merred*, 580 F. App'x 557, 557-58 (9th Cir. 2014) (noting that the officers had probable cause because they relied on reasonably trustworthy information in making the arrest). In Green's response, however, he claims the dispatcher read the entire NCIC report to Adams—presumably including the waiver. (Pl.'s Resp. 2 (citation omitted)). This apparent factual dispute would preclude summary judgment regarding probable cause for the arrest related solely to the Tennessee protective order.

Green also responds that Adams testified that she did not arrest Green for parking in the handicap space. (Pl.'s Resp. 5 (citing Adams Dep. 17)). This argument is unavailing. The Supreme Court has rejected the notion that an officer's subjective intention plays a role in determining probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[An officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). In other words, "[t]he offense establishing probable cause need not be 'closely related to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest.'" *Hartsman v. Thomas*, 931 F.3d 471, 481-82 (6th Cir. 2019) (footnote omitted) (quoting *Devenpeck*, 543 U.S. at 153).

Even assuming that Adams lacked probable cause to arrest Green for violating the Tennessee protective order, Adams clearly had probable cause to believe that Green was violating KRS 189.459(2), which prohibits parking in a handicap parking space without authorization. Green offers two arguments in opposition to this point: (1) that Green had not technically "parked"

the car; and (2) KRS 189.459(2) is not an arrestable offense. (Pl.'s Resp. 5-6). Neither is sufficient to create a genuine issue of material fact as to probable cause.

Green does not dispute that his car was stopped in the handicap spot, but invokes *Black's Law Dictionary* to question whether he was technically "parked," asserting that "Blacks [sic] Law [D]ictionary defines parked as to 'voluntarily leaving an automobile, especially on a street or highway, when not in use.'" (Pl.'s Resp. 6 (providing no citation)). The term "parked" is not defined in KRS Chapter 189, nor does there appear to be any Kentucky court decision discussing the term. In *Poe v. Commonwealth*, No. 2017-CA-001579-MR, 2019 WL 168675 (Ky. App. Jan. 11, 2019), however, the Kentucky Court of Appeals referred to a car as "parked" despite recognizing that it was occupied. *Id.* at *2 (Ky. App. Jan. 11, 2019) ("The officers saw Poe sitting inside a vehicle parked in the driveway."). Further, there is no reason to believe the Kentucky legislature intended to use the restricted definition of "parked" suggested by Green, especially where it would authorize conduct plainly contrary to the clear intent of the statute: to ensure handicap spaces remain available for those with disabilities. *See* KRS 189.459(2).

Green next argues that even accepting that he was parked in a handicap zone, KRS 189.459(2) is not a criminal offense. (Pl.'s Resp. 5-6). The Supreme Court has been clear that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Therefore, an arrest is constitutionally reasonable so long as "an officer has probable cause to believe a person committed even a minor crime in his presence . . . ." *Id.* at 171 (citations omitted). A sister court has applied this logic to a "violation" under Kentucky law and explained that "[a] violation, under Kentucky law, is criminal conduct." *Gover v. Muravchick*,

6

No. 5:17-CV-272-REW, 2018 WL 4518580, at *5 n.6 (E.D. Ky. Sept. 20, 2018). The court continued, "[w]hile Kentucky chooses to preclude arrests for alleged 'violations,' that policy decision does not define or modify what the Fourth Amendment permits." *Id.* (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)). The court then concluded, "[t]he Fourth Amendment, quite simply, does not 'forbid[] a warrantless arrest for a minor criminal offense,' even those 'punishable only by a fine,' such as the Kentucky violation at issue here." *Id.* (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 318 (2001)). Applying this reasoning here, an arrest for violation of KRS 189.459(2) does not run afoul of the Fourth Amendment. The facts and circumstances within Adams' knowledge were sufficient to support a prudent person's belief that Green was violating KRS 189.459(2). Accordingly, Green's Section 1983 claim fails as a matter of law.

    2.    *Qualified Immunity*

As the Sixth Circuit has explained:

> Qualified immunity shields government officials from civil liability in the performance of their duties so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Such immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. Qualified immunity will ordinarily apply unless it is obvious that a reasonably competent official would have concluded that the actions taken were unlawful. The qualified immunity analysis is a two-step inquiry: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though the steps need not be taken in that order. The clearly established step asks whether existing precedent placed the conclusion that the defendant violated the constitution under the circumstances beyond debate.

*Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (internal quotation marks omitted) (internal citations omitted) (citation omitted). Once a defendant raises qualified immunity, "[the] plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citation omitted).

7

Even assuming that Adams lacked probable cause and therefore violated Green's Fourth Amendment right by arresting him, Green has made no showing that it should have been obvious to a reasonably competent official in Adams' position that she lacked probable cause to both: (1) arrest Green for parking in a handicap spot; and (2) arrest Green for violating the foreign protective order. Indeed, Green's discussion of qualified immunity is comprised of only a single introductory sentence followed by a block quote containing an overview of Sixth Circuit law on qualified immunity. (*See* Pls.' Resp. 6 (quoting *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020))). Green's perfunctory reference to qualified immunity is a far cry from raising any existing precedent that would raise a genuine issue of material fact about whether it would be obvious to a reasonably competent officer in Adams' position that she lacked probable cause to arrest Green.[2]

### 3. *Conclusion*

There is no genuine issue that Adams' arrest of Green was supported by probable cause and that Adams' conduct is protected by the doctrine of qualified immunity. Accordingly, the motion is granted as to Green's Section 1983 claim against Adams in her individual capacity.

### B. Remaining Claims

Green does not respond to any of Defendants' arguments as to the remaining claims against either Adams or against the remaining Defendants. Opposition to Defendants' motion is deemed waived as to these claims. *See Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the

---

[2] As explained in the preceding section, there is no discernable basis under Kentucky law for concluding that KRS 189.459(2) applies only to unoccupied vehicles. Even if this was the intent of the Kentucky legislature, the absence of any authority supporting Green's contention demonstrates that Adams did not violate a "clearly established right."
8

motion." (citation omitted)); *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019) ("As a practical matter, 'it is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (alteration in original) (quoting *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011))). Accordingly, the motion is granted as to all of Green's remaining claims against all Defendants.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (DN 23) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 22, 2024

cc:   counsel of record